UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                  CRIMINAL NO. 3:08-CR-77-DPJ-LGI

MARK J. CALHOUN

ORDER

Defendant Mark J. Calhoun asks the Court to end his term of supervised release based on credits he earned during his incarceration but which were not credited to his term of imprisonment because he was released early. Mot. [528]. This is not Calhoun's first attempt to have his term of supervised release terminated early. *See* Mot. [511]; Mot. [524]. As explained below, Calhoun's motion is denied.

I.      Facts and Procedural History

In February and March 2010, Calhoun went to trial on a 38-count second superseding indictment charging him with wire fraud, money laundering, and conspiracy related to the procurement of mortgage loans from various lenders. The jury convicted him on all but two of the charges, and, on June 6, 2011, the Court sentenced Calhoun to a below-guideline 200-month total term of incarceration, to be followed by a 3-year term of supervised release.[1] Calhoun appealed, and the Fifth Circuit affirmed.

As part of its response to the COVID-19 pandemic, the Bureau of Prisons released Calhoun to home confinement as of May 5, 2020. Concerned that BOP would return him to full custody after the pandemic, Calhoun asked the Court to modify his sentence under 28 U.S.C. § 3582(c)(1)(A). The Court granted that motion on May 14, 2021, reducing Calhoun's sentence

---

[1] The guideline range was life imprisonment.

to time served.  Calhoun therefore served a little more than half his original below-guideline sentence.

Calhoun first sought early termination of his supervised release in May 2022.  The Court denied Calhoun's initial motion and a follow-up motion to clarify.  Order [515]; Order [527].  In the latter Order, the Court accepted the Government's argument that Calhoun's request for earned-time credits should be considered a motion under 28 U.S.C. § 2241 and denied for failure to exhaust administrative remedies.  See Order [527]; Gov't Resp. [525] at 1.

Calhoun's present motion seeks reconsideration, and he includes as attachments correspondence evidencing his "attempt to satisfy the administrative remedy requirement."  Mot. [528] at 1.  The Government responded by pivoting from its earlier exhaustion argument; it now says, "the exhaustion requirement does not apply to . . . Calhoun's claims since he was not in custody at the time of filing."  Gov't Resp. [536] at 2 n.1.  It thus suggests that § 2241 is inapplicable and the Court "lacks subject-matter jurisdiction over . . . Calhoun's claims."  Id.

The Court desired a complete reply from Calhoun, so it appointed counsel to represent Calhoun for purposes of his present motion and directed counsel to reply.  Order [538] at 2.  Counsel did so, and the Court now has a better record to consider.

II.     Analysis

The first question is whether Calhoun's motion is properly characterized as one under 28 U.S.C. § 2241, and, if so, whether the Court has subject-matter jurisdiction.  Motions seeking sentencing credits are generally viewed as challenges to the execution of a federal sentence and therefore fall under § 2241.  See United States v. Cleto, 956 F.2d 83, 84 (5th Cir. 1992).  The Court has "habeas jurisdiction under [§] 2241" if the petitioner is "'in custody' at the time he files his petition."  Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 540 (5th Cir. 2003) (quoting

28 U.S.C. § 2241(c)). "Usually, 'custody' signifies incarceration or supervised release, but in general it encompasses most restrictions on liberty resulting from a criminal conviction." *Id.* (quoting *Pack v. Yusuff*, 218 F.3d 448, 454 n.5 (5th Cir. 2000)).  Calhoun is presently serving his term of supervised release in this district.  The Court has subject-matter jurisdiction to consider his § 2241 petition.[2]

"[F]ederal prisoners must exhaust 'administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241.'" *Mayberry v. Pettiford*, 74 F. App'x 299, 299 (5th Cir. 2003) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)).  Calhoun alternatively argues that he "attempt[ed] to satisfy the administrative remedy requirement," Mot. [528] at 1, and that he should be excused from exhausting under the futility exception, Reply [542] at 6.  The Court agrees with the second argument.

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies are either unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (quoting *Hessbrook v. Lennon*, 777 F.2d 999, 1009 (5th Cir. 1985)).  Calhoun documented his attempts to get BOP to consider his request to have credits he earned apply to his term of supervised release and BOP's responses indicating it could not apply the credits.  *See* Exs. [528-1, 528-2, 528-3].  Under the unique circumstances of this case, the Court excuses Calhoun from the exhaustion requirement.[3]

---

[2] As mentioned, the Government says that "the exhaustion requirement does not apply to . . . Calhoun's claims since he was not in custody at the time of filing."  Gov't Mem. [536] at 2 n.1.

[3] If Calhoun's motion is not properly characterized as one under § 2241, the Court has authority to reduce Calhoun's term of supervised release under 18 U.S.C. § 3583(e).  Were the Court to consider Calhoun's motion under 18 U.S.C. § 3583(e), there would be no exhaustion requirement.

The Court now turns to the merits of Calhoun's § 2241 motion. Calhoun says he did not get credit for all the time he earned under 18 U.S.C. § 3632(d)(4). That statute allows prisoners to accumulate time credits for participation in "evidence-based recidivism reduction programming or productive activities" and explains that those time credits "shall be applied *toward time in prerelease custody or supervised release*." 18 U.S.C. § 3532(d)(4)(A) & (C) (emphasis added). Calhoun argues that the emphasized language mandates an order reducing his supervised release by the credited time. *See* Reply [542] at 7.

There is some support for this construction. Most notably, the court in *Dyer v. Fulgham* held that "the unambiguous, mandatory language of the statute provides that earned-time credits may be applied to a term of supervised release." No. 1:21-CV-299-CLC-CHS, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022). But *Dyer* has gained almost no traction and has been expressly rejected by nearly every court to consider it. *See Shiflet v. Yates*, No. 2:22-CV-00161-BSM-PSH, 2023 WL 2817333, at *3 (E.D. Ark. Feb. 9, 2023) (holding that *Dyer* "is unpersuasive and should not be followed"), *report and recommendation adopted*, 2023 WL 2813877 (E.D. Ark. Apr. 6, 2023); *accord Gelagotis v. Boncher*, No. 22-CV-11697-DLC, 2023 WL 6377874, at *4 (D. Mass. Sept. 29, 2023); *Goggans v. Jamison*, No. 1:23-CV-03645-GHW, 2023 WL 7389136, at *2 (S.D.N.Y. Oct. 13, 2023); *Aipoalani v. Derr*, No. 23-CV-00375-DKW-WRP, 2023 WL 6541474, at *3 (D. Haw. Oct. 6, 2023); *United States v. Courmier*, No. 1:16-CR-19(6), 2023 WL 5434756, at *4 (E.D. Tex. Aug. 22, 2023); *Ector v. Engleman*, No. 22-6044, 2023 WL 6969784, at *5 (C.D. Cal. July 28, 2023).

That list goes on because most courts have followed constructions like the one addressed in *United States v. Calabrese*:

> If § 3632(d)(4)(C) provided that time credits shall be applied to reduce a term of supervised release, then the Court might agree with the decision reached in *Dyer*.

4

> But the statute provides that time credits shall be applied toward supervised release. Use of the word "toward" means that credits can be applied to bring "time in prerelease custody or supervised release" closer to occurring because credits applied "toward" something generally means to bring that something closer to happening.

No. 1:11-CR-437, 2023 WL 1969753, at *2 (N.D. Ohio Feb. 13, 2023) (rejecting *Dyer*) (citing Black's Law Dictionary (11th ed. 2019) (defining "toward," in relevant part, as "in the direction of; on a course or line leading to (some place or something)")).

In short, the statute "allows a prisoner to either complete the service of their sentence in prerelease custody or complete their term of supervised release at an earlier date by transferring the prisoner to supervised release at an earlier date" but "does not allow a prisoner to reduce the imposed length of supervised release." *Id.* at *3. Every court to consider *Dyer* and *Calabrese* has sided with *Calabrese*. *See, e.g.*, *Gonzalez v. Pierre-Mike*, No. 1:23-CV-11665-IT, 2023 WL 5984522, at *5 (D. Mass. Sept. 14, 2023).

Just because nearly every court has reached the same conclusion does not mean the construction is correct. But this Court also finds that the *Calabrese* construction is more faithful to the statutory text. It also aligns with the applicable regulation. As 28 C.F.R. § 523.44(d) explains, earned credits may be applied "toward *early transfer to* supervised release." (Emphasis added). The credits Calhoun earned while incarcerated cannot shorten his supervised release.[4]

Finally, Calhoun argues in the alternative that the Court should terminate his term of supervised release under 18 U.S.C. § 3583(e)(1). That statute provides:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the

---

[4] Though this construction moots the point, the Court observes that the only reason Calhoun never received credit toward early release is because he was released early; the credits never had a chance to kick in.

> expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice . . . .

The relevant § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> . . . .
>
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > . . . .
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> >
> > > (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> > >
> > > (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
> >
> > . . . .
>
> (5) any pertinent policy statement—
>
> > (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> >
> > (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Working in reverse, the seventh factor is inapplicable because Calhoun was never required to pay restitution.[5] Turning to sentencing disparities, Calhoun was by far the most culpable of his co-defendants, and his sentence reflected it. Even after the downward variance, his term of imprisonment more than doubled the next longest one. Four of Calhoun's co-defendants also received a three-year term of supervised release, and all of them apparently served those terms to completion. Ending Calhoun's term of supervision early—after he already received a well-below-guidelines sentence that was ultimately cut short because of the pandemic—would create an unwarranted sentencing disparity between him and his co-defendants.

Calhoun makes no specific argument under the fourth and fifth factors. And while requiring Calhoun to serve the remaining months of his term of supervised release may not provide any deterrent value of its own, the Court returns to the nature and circumstances of the serious offenses Calhoun committed and finds that early termination of supervised release is not appropriate. Based on his offense and criminal history, a guideline sentence would have been life in prison. The Court carefully considered all that when imposing the original sentence and later when granting his motion for compassionate release. Shortening his sentence again would not be sufficient to address the seriousness of his crime or the nature and circumstances of the offense. And while the Court commends Calhoun for his behavior while on supervised release, that alone is no basis for relief. See *United States v. Seymore*, No. 07-358, 2023 WL 39676200,

---

[5] The PSR states that Calhoun and his co-defendants owed $2.23 million in restitution, and two of his co-defendants have been forced to pay. But Calhoun avoided that debt because the Court deferred restitution during his sentencing hearing and the issue was never pursued after that.

at *1 (E.D. La. June 13, 2023) (explaining that mere compliance with the terms of supervised release will not generally justify termination) (collecting cases).

III.   Conclusion

The Court has considered all arguments. Those not directly addressed would not have changed the outcome. Calhoun's motion for early termination of supervised release [528] is denied.

**SO ORDERED AND ADJUDGED** this the 16th day of November, 2023.

> s/ *Daniel P. Jordan III*
> CHIEF UNITED STATES DISTRICT JUDGE